IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| SHANE PAUL ALIRES, **Plaintiff,** v. KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, **Defendant.** | MEMORANDUM DECISION AND ORDER<br><br>Case No. 1:20-cv-00023-JCB<br><br>Magistrate Judge Jared C. Bennett |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties in this case have consented to Judge Jared C. Bennett conducting all proceedings, including entry of final judgment.[2] Before the court is Shane Paul Alires's ("Mr. Alires") appeal of Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") final decision determining that Mr. Alires was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act[3] and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[4] After careful consideration of the written briefs and the complete record, the court has determined that oral

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she has been substituted for Commissioner Andrew M. Saul as the Defendant in this action. ECF No. 27.

[2] ECF No. 15.

[3] 42 U.S.C. §§ 401-434.

[4] *Id*. §§ 1381-1383f.

argument is not necessary in this case. Based upon the analysis set forth below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Mr. Alires alleges disability due to various physical and mental impairments. In March 2016, Mr. Alires filed for DIB and SSI.[5] His applications were denied initially and upon reconsideration.[6] On March 27, 2017, Mr. Alires requested a hearing before an Administrative Law Judge ("ALJ"),[7] which occurred on November 30, 2018.[8] The ALJ issued a written decision on February 20, 2019, denying Mr. Alires's claims for DIB and SSI.[9] On December 27, 2019, the Appeals Council denied his request for review,[10] making the ALJ's decision final for purposes of judicial review.[11] On February 27, 2020, Mr. Alires filed his complaint in this case seeking review of the Commissioner's final decision.[12]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal

---

[5] ECF Nos. 17-19, Administrative Record ("AR ___") 12.

[6] AR 1-6.

[7] AR 12.

[8] AR 37-62.

[9] AR 12-29.

[10] AR 1-5.

[11] 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

[12] ECF No. 3.

standards were applied."[13] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[14] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[15] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[16] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[17]

These standards of review apply to the ALJ's five-step evaluation process for determining whether a claimant is disabled.[18] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[19]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant

---

[13] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

[14] 42 U.S.C. § 405(g).

[15] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[16] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[17] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted) (first alteration in original).

[18] 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[19] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.
>
> . . . .
>
> Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . .[20]

At the fourth step, the claimant must show, given his residual functional capacity ("RFC"), that the impairment prevents performance of his "past relevant work."[21] "If the claimant is able to perform his previous work, he is not disabled."[22] If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability."[23]

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."[24] At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of his age, education, and work experience."[25] If it is determined that the claimant "can make an

---

[20] *Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii), 416.920(a)(4)(i)-(iii).

[21] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[22] *Williams*, 844 F.2d at 751.

[23] *Id*.

[24] *Id*.

[25] *Id*. (quotations and citation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

4

adjustment to other work," he is not disabled.[26]  If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," he is disabled and entitled to benefits.[27]

## ANALYSIS

Mr. Alires contends generally that the ALJ erred in determining his RFC by "failing to correctly consider" all the limitations flowing from his physical and mental impairments.[28]  First, Mr. Alires argues that the ALJ erred in concluding that his statements regarding the limiting effects of his symptoms were inconsistent with the evidence in the record. Second, Mr. Alires argues that the ALJ's ultimate RFC assessment failed to include sufficient restrictions to account for all of his workplace limitations, which caused the ALJ to erroneously conclude that he is not disabled. As shown below, neither argument demonstrates that the ALJ's decision is unsupported by substantial evidence.

**I.   THE ALJ'S FINDING THAT MR. ALIRES'S SYMPTOMS WERE NOT CONSISTENT WITH THE RECORD IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

The ALJ's evaluation of Mr. Alires's symptoms is supported by substantial evidence. The ALJ found that although Mr. Alires's medical impairments could "reasonably be expected to cause" his alleged symptoms, Mr. Alires's statements concerning the "intensity, persistence and limiting effects" of those symptoms were "not entirely consistent" with the evidence in the

---

[26] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[27] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[28] ECF No. 24 at 18.

record.[29]  Although Mr. Alires asserts that the ALJ erred by not fully accepting his subjective claims of work-related limitations,[30] Mr. Alires does not point to any specific errors in the ALJ's assessment of the medical evidence and opinion evidence in this case. In fact, Mr. Alires fails to point to other evidence in the record to support his claimed limitations.  Instead, Mr. Alires suggests that his statements should be given greater weight based on a general and theoretical argument that "comparing a claimant's testimony regarding work-related limitations to the objective medical evidence is of limited utility in evaluating … a claimant's … ability to work."[31]  According to Mr. Alires, there are many reasons why a claimant's statements concerning their work-related limitations might be inconsistent with the objective medical evidence and other evidence in the record,[32] and, therefore, the court "should examine the [ALJ's] thought process very carefully."[33]  As explained in detail below, Mr. Alires has failed to

---

[29] AR 25.

[30] AR 22-28.

[31] ECF No. 24 at 26.

[32] Mr. Alires argues that the objective medical evidence often fails to support a claim of work-related limitations because "inconsistencies" are "built into the system." ECF No. 24 at 25. According to Mr. Alires, these inconsistencies may occur because: medical records typically focus on diagnosis and treatment and are not concerned with assessing work-related functional limitations; a claimant's treating physician may be a specialist who is focused on a single impairment rather than considering the combined impact of all the claimant's impairments; or a claimant might not be able to afford anything beyond routine treatment and maintenance, ruling out sophisticated testing and functional capacity evaluations.  *Id.* at 22-27.

[33] ECF No. 24 at 22. Mr. Alires's argument in this regard appears to be more concerned with the regulations that govern the ALJ's evaluation of symptoms and questioning whether the approach set forth in the regulations adequately serves its intended purpose, and less focused on the ALJ's application of those regulations to the particular facts and evidence in this case.

show that the ALJ erred in concluding Mr. Alires's statements about symptoms and limitations were not consistent with the evidence in the record.

The regulations governing the evaluation of disability claims require the ALJ to consider objective medical and other evidence when determining how a claimant's symptoms affect his capacity to perform work-related activities.[34] A "symptom" is defined as "the individual's own description or statement of his or her physical impairment(s)."[35] Under the regulations, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability."[36] An ALJ must evaluate a claimant's statements concerning his symptoms to determine whether those complaints are consistent with other evidence in the administrative record. Where an ALJ finds consistency between the complaints and evidence of record, this tends to show the claimant's symptoms are more likely to reduce his capacity to work. Conversely, a finding that the claimant's subjective complaints are not consistent with the evidence supports a determination that claimant's symptoms are less likely to reduce his capacity to work.[37]

---

[34] *See generally* 20 C.F.R. §§ 404.1529 and 416.929 (detailing the framework for evaluating a claimant's statements of symptoms); s*ee, e.g.,* 20 C.F.R. § 404.1529(c)(4) ("In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled.").

[35] Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

[36] *Id.*

[37] *Id.*

SSR 16-3p provides a two-step framework for the ALJ to consider the extent to which a claimant's symptoms are consistent with the evidence in the record.  First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[38]  Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities.[39]  To do this, the ALJ will examine objective medical evidence, the claimant's statements regarding his symptoms, information from medical sources, and "any other relevant evidence" in the record.[40]  SSR 16-3p also directs the ALJ "to consider the consistency of the claimant's own statements" by comparing the claimant's statements made in connection with their disability claim "with any existing statements the individual made under other circumstances."[41]  Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and […] clearly articulated" for the purposes of any subsequent review.[42]

---

[38] *Id.* at *3

[39] *Id.*

[40] *Id.* at *4.

[41] *Id.*

[42] *Id.* at *9.

The consistency analysis is "peculiarly the province of the finder of fact" and such determinations will not be upset if the findings are supported by substantial evidence.[43] "[S]o long as the ALJ 'sets forth the specific evidence [she] relies on in evaluating the claimant's credibility,' [she] need not make a 'formalistic factor-by-factor recitation of the evidence.'"[44]

Here, the ALJ considered the proper regulatory framework and stated that although the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," Mr. Alires's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[45] To support this determination, the ALJ properly considered Mr. Alires's statements in relation to the objective medical evidence and other evidence in the record, and in making her findings, the ALJ identified the specific evidence on which she relied.[46]

With regard to Mr. Alires's statements concerning his symptoms, the ALJ noted that Mr. Alires's function report indicates difficulties in every ability.[47] Mr. Alires stated that his impairments affect his memory as well as his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, complete tasks, concentrate, follow instructions, use his hands,

---

[43] *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010).

[44] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).  The use of the term "credibility" has been eliminated from the Social Security Administration's sub-regulatory policy for the purpose of clarifying "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2.

[45] AR 25.

[46] AR 19-27; *see* 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4); SSR 16-3p.

[47] AR 19-20, 295.

and get along with others.[48] Mr. Alires reported breathing problems associated with air quality, cold, heat, climbing stairs, and exposure to fumes, odors, and cleaning products.[49] Additionally, Mr. Alires stated that he suffers from fatigue, dizzy spells, depression, extreme anxiety, and cannot focus on anything.[50] According to Mr. Alires, his condition got so bad that he could not get out of bed.[51] Mr. Alires testified that his heart and lung conditions and his back pain "limited his ability to sit longer than for just a few minutes, stand longer than for just a few minutes, [and] walk longer than for just a few minutes."[52]

Regarding his daily activities, the ALJ noted that Mr. Alires's stated that he lived with his mom, he could drive to the store but could not drive for longer periods of time due to pain from sitting, and he could no longer do activities such as building or riding motorcycles.[53] Mr. Alires testified that he slept a significant amount of time during the day and did some things around the house but avoided cleaning solvents.[54]

The ALJ then properly considered Mr. Alires's testimony and written statements in light of the medical evidence and other evidence in the record. For example, the ALJ noted that although Mr. Alires's medical history confirmed disc protrusions, modest facet arthropathy, and

---

[48] *Id.*

[49] AR 20, 44-46.

[50] *Id.*

[51] *Id.*

[52] AR 43, 48, 53.

[53] AR 20, 42-43, 49-51.

[54] AR 20, 48-49, 52-53.

back surgery, his post-operative medical records revealed both limited treatment and limited complaints regarding his back condition during the relevant period.[55] The ALJ also noted that although Mr. Alires was subject to activity restrictions in 2014, prior to his back surgery, and again in 2015 following his surgery, these restrictions were temporary and Mr. Alires returned to work, without restrictions for his back condition, months before his alleged onset date.[56] The ALJ also referenced medical records from 2017 when Mr. Alires presented for a physical exam and stated that he needed a physical to renew his commercial driving license. On that occasion, the medical records indicate that Mr. Alires demonstrated full strength in all his extremities, with a normal gait and full range of motion.[57] The ALJ was unable to find any evidence in the medical record to support his claimed inability to sit for an extended length of time.

Regarding Mr. Alires's heart condition, the ALJ similarly noted the lack of any cardiac limitations from a treating physician.[58] Although in early 2016 Mr. Alires was "written out for total disability" for nearly four months, followed by three months of partial disability, the ALJ noted that these were temporary limitations imposed in response to Mr. Alires's hospitalization for chronic heart failure ("CHF").[59] The ALJ additionally observed that the treatment records revealed that Mr. Alires's hospitalization for CHF was preceded by a year of non-compliance

---

[55] AR 25.

[56] AR 26.

[57] AR 24.

[58] AR 25.

[59] AR 26.

with antihypertensive medications and recent heavy methamphetamine use.[60] The ALJ observed that subsequent testing has consistently revealed only "mild CHF," good exercise tolerance, and an unremarkable EKG in response to exercise.[61] Additionally, Mr. Alires's left ventricular ejection fraction improved to approximately 60 percent with treatment.[62] Finally, the ALJ recognized that although Mr. Alires's 2015 "dilated cardiomyopathy" diagnosis placed him within New York Heart Association class II, that classification is generally consistent with an ability to perform light work from a cardiac standpoint.

      Similarly, the ALJ noted that although Mr. Alires suffers from asthma and emphysema, the treatment notes consistently indicate that these conditions are "stable" and "mild."[63] The ALJ also pointed to a January 2017 pulmonary consultation wherein Mr. Alires indicated that he was currently a pre-law student at Weber State, he reported using his asthma medication only "occasionally" or "not very often," and admitted to continuing to smoke a half-pack of cigarettes per day.[64] The ALJ observed that Mr. Alires had limited mental health treatment during the relevant period and no ongoing mental health treatment.[65] Finally, the ALJ noted that Mr.

---

[60] AR 21.

[61] AR 21-22.

[62] AR 21.

[63] AR 22-23, 25.

[64] AR 22.

[65] AR 25.

Alires's statements indicating that he does not do much around the house, while perhaps true, do not establish an inability to do sedentary work.[66]

Based on the foregoing, the court finds that the ALJ performed an appropriate analysis and adequately articulated the basis for her findings. Accordingly, the court finds that substantial evidence supports the ALJ's finding that Mr. Alires's testimony regarding his functional limitations was "not entirely consistent" with the record.

## II.   THE ALJ'S RFC ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Next, Mr. Alires argues that the ALJ erred at step five of the sequential evaluation process by concluding that there were jobs in significant numbers in the national economy that Mr. Alires could perform.[67] More specifically, Mr. Alires asserts that the ALJ erred by failing to include additional limitations in the final RFC assessment to account for Mr. Alires's inability to show up for work on a regular basis and on time, his inability to stay on task, and his need to rest and take breaks.[68]

Mr. Alires's argument is based on his contention that his combination of physical and mental impairments would

> likely cause him to miss work more than one day a month and would cause him, when he was at work, to be off task due to needing to take breaks or to rest more than 10% of a typical workday, which would preclude him from reaching and maintaining satisfactory

---

[66] AR 25.

[67] AR 29.

[68] ECF No. 24 at 28.

        levels of attendance, performance, and productivity on a continuous, sustained basis.[69]

At the end of the administrative hearing, after the ALJ presented a series of hypotheticals to the Vocational Expert ("VE"), counsel for Mr. Alires asked the VE what jobs, if any, would be available in the national economy if he added the restrictions that Mr. Alires presently claims the ALJ erroneously omitted. Counsel asked about the need to take a 10 to 15-minute break every hour, an inability to sit longer than 30 minutes per hour, an inability to stand longer than 30 minutes per hour, and a likelihood of being absent from work at least two days in a typical month.[70] The VE confirmed that such limitations would, as a practical matter, eliminate all employment.[71] Accordingly, Mr. Alires is essentially arguing here that the ALJ should have relied on the VE's response to the more restrictive hypotheticals in reaching her final RFC assessment. This argument fails.

First, Mr. Alires's argument overlooks the fact that the record contains no evidence that his impairments require him to be off task more than 10% of a typical workday, preclude him from maintaining satisfactory attendance and punctuality, and necessitate frequent breaks throughout the workday. To suggest otherwise is to engage in rank speculation that is inconsistent with and not supported by the evidence. Additionally, to the extent Mr. Alires's argument can be understood as asserting that he had limitations beyond those accepted by the

---

[69] ECF No. 24 at 30.

[70] AR 59-60.

[71] AR 60.

ALJ, his argument is directed to the weight of the evidence, which this court will not consider on appeal.[72]

Moreover, Mr. Alires expressly acknowledges that an ALJ is not required to "accept an RFC which the claimant (or his representative) suggests, or […] accept a VE's answer to a hypothetical question that includes limitations" alleged by the claimant but not accepted by the ALJ as supported by the record.[73] That is precisely what occurred here. Having previously determined that Mr. Alires's claimed limitations were not consistent with the evidence in the record, the ALJ was under no obligation to include those limitations in the final RFC assessment.[74] Simply put, to the extent the ALJ's RFC assessment did not include such limitations, it was because the ALJ found them inconsistent with the evidence.[75] In this case, in the third and final hypothetical the ALJ provided to the VE – the hypothetical on which the ALJ

---

[72] *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (providing that the court reviewing ALJ's decision reviews "only the sufficiency of the evidence, not its weight); *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (providing that in "reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency").

[73] ECF No. 24 at 31.

[74] *See, e.g., Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record."); *see also, e.g., Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) ("The administrative law judge had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied.").

[75] *See, e.g.,* Clarification of Rules Involving Residual Functional Capacity Assessments, 68 Fed. Reg. at 51.155 (recognizing that claimant bears the burden of proving residual functional capacity).

ultimately relied – the ALJ included the limitations contained in the final RFC determination.[76]

Accordingly, there was no error.[77]

## CONCLUSION AND ORDER

The court concludes that all of Mr. Alires's arguments fail. Accordingly, IT IS HEREBY ORDERED that the Commissioner's decision in this case is AFFIRMED.

IT IS SO ORDERED.

DATED September 28 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[76] AR 19, 55-57.

[77] *See, e.g., Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

ultimately relied – the ALJ included the limitations contained in the final RFC determination.[76]

Accordingly, there was no error.[77]

## CONCLUSION AND ORDER

The court concludes that all of Mr. Alires's arguments fail. Accordingly, IT IS HEREBY ORDERED that the Commissioner's decision in this case is AFFIRMED.

IT IS SO ORDERED.

DATED September 28 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[76] AR 19, 55-57.

[77] *See, e.g., Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").